May it please the court, Mark Friedman on behalf of Helen Cathy Sue Wiechert, I'm going to split my time equally with Ms. Wood who represents Mr. Viers. I couldn't hear. I'm sorry. I'm going to split my time in half and Ms. Wood. Clerk, please run it ten and ten. Thank you. We are asking this court to reverse the district court finding in this case. Is there a distinction in how it can come out between Viers and Wiechert? No. Is it both win or both lose? It's both win or both lose. Your Honor, this is a motion on a motion to suppress. And we submit that there was – Part of your argument about how the cop doesn't mention to the judge that the tip is by a woman who says she heard a conversation a couple of years ago. And he doesn't mention to the judge that the woman's under indictment for multiple counts of theft and welfare fraud. I just left all those things out. But the thing that I wonder about is the smell. On the one hand, you've got the neighbors saying they couldn't smell anything and they sure couldn't smell it over the hay and the horse manure. On the other hand, you've got the police saying they did smell it. Why don't we have to go with the district judge on that? Well, first of all, Your Honor, the fact is that most of the information that a magistrate should have had to make a determination as to whether or not the officer could smell the marijuana was not in the affidavit. There was no indication of the distance at which the officer was when he claims to have smelled the marijuana. There was no clear indication of where on the property he was when he claims to have smelled the marijuana. And as is further laid out at the hearing in this case, it turns out, based upon the expert testimony we had, that there clearly is a fundamental question as to whether there's even a possibility that the officer at the distance he ultimately claimed at hearing to have been when he smelled the marijuana, whether it was scientifically possible for him to have smelled the marijuana. What we submit overall in this case, the fact is that originally this was based upon some information that came from an informant. What the affidavit does not tell the magistrate is how old that information was. In fact, it was two and a half years old. Fails to indicate that the informant was, in fact, someone who had a grievance against one of the parties, her ex-husband. He's not somebody that was ever indicted in this case, but he had some relationship with one of the co-defendant in this case. And he fails to lay out the fact that she was just under indictment for crimes of dishonesty. There is a mention in the affidavit that she had previously been convicted of crimes of dishonesty, but essentially that was basically kind of given short shrift. Additionally, there was an indication about some power records. And the fact of the matter is all we have is a conclusory opinion from the DEA agent in this case. Was there any evidence put in by either side about how many kilowatt hours would ordinarily be used? There was evidence. Again, that was not evidence that was submitted as part of the affidavit in this case. At hearing, it turns out that the DEA actually testified that there was no way that he could have possibly determined the size of a grove based upon the power consumption. And what was brought out at hearing was the fact that the power consumption that was used in this case was, in fact, comparable to what power was used by neighbors and by the previous tenant of that house. So essentially the ---- for the purpose of misleading the magistrate. What we submit is that there's actually ---- this is an issue of law, Your Honor, not necessarily an issue of fact. Because the basic thing is what was the information that was in front of the magistrate, not what came out at hearing later on, not at the Franks hearing, but the information that was in front of the magistrate. And that's why what I've attempted to suggest is that there is a number of factors that were not presented to the court. So in terms of the question of whether there's fact, there were certainly some factual findings that the district court made. And while we do take issue with those facts, there's a more fundamental problem here. And the ---- and that fundamental problem is that the information was not there. There was not ---- there was not sufficient information that was presented to the magistrate when he originally made his determination whether to grant or deny the affidavit. Well, let's go to the affidavit then. Okay. All right. After finding that the affidavit supported the search warrant, omitted material information bearing on the reliability of that confidential informant. The district court concluded the tip provided by the confidential informant wasn't necessary to support a finding of probable cause. It doesn't matter how unreliable that confidential informant was. Of course, Your Honor, the case law says that information of that sort should have been excised in the court's determination ---- in the court's consideration of the warrant. That information should have been excised. And the district court ---- It would be a good practice to excise it, but is it required? We would submit in this case it absolutely should have been because, in fact, the court, even though the court's saying, well, it's only the initial piece of information that starts it, the court was, in fact, relying upon unreliable information. That's ultimately what comes ---- what we've come down to here in a number of different factors. Not so much a question of credibility, but of reliability. Reliability both in terms of the informant, reliability with regard to these power records, and most important of all, Your Honors, reliability with regard to the ability of this officer to have smelled marijuana at the distance. In fact, what came out at hearing was the fact that this officer said ultimately the reason ---- the basis for his search warrant was the smell. And then when we find out ---- when we actually find out at hearing that there's an awful lot of reason to question whether it was even possible for him to have smelled that, there was evidence that the defense brought in, an expert. And the expert testified that based upon the distance which the officer ultimately testified to, that the odor of marijuana would have dissipated at that smell ---- at that distance. All right. What did they have to do to qualify the agent as a good smeller? They didn't. I mean, essentially ---- What would be required? What would be evidence that he could smell marijuana despite other factors involved? Let me answer that in two parts, and then I'll yield my time. Your Honor, first of all, with regard to the agent's ability to smell, there are other things that when a police officer ---- his sight. We know that the sight is normally tested. We know that his hearing is probably normally tested. We don't know anything about his smell. His ability, excuse me, his sense of smell. It's not something that's normally ---- that is normally tested. So it gives ---- at least it creates a question. And what we would suggest, Your Honor, is that for an affidavit to be based upon smell, at the very least, the affidavit should contain information with regard to distance and location that the smell occurred. I think at this point I'd like to reserve ---- Your Honor, Oregon. I'm sorry. There are some parts of the country where everybody uses electric heat. Some parts where everybody pretty much uses oil, hot water. Some parts where everybody uses wood stoves. Is there anything real typical about this trailer so that it would just be assumed by the magistrate that the residents did or did not use electric heat? Is that something that everybody knows in Oregon and I just don't know? I guess I would have to say, Your Honor, there isn't anything that's just a given with regard to that because certainly this happened in a rural area, Lapine, Oregon, eastern Oregon. It's an area where there probably is electricity and wood heat would be the most common. I just don't know about it. Sometimes an assumption by a magistrate would be reasonable, like there's snow on the ground in January in Fairbanks, Alaska. Sometimes it wouldn't be because people heat all different ways. That's what I'm trying to find out. I understand, and I guess I would have to say that I don't think there's anything that the magistrate in this case could automatically assume would be the basis of a heating system because I think there's a variety from electric wood, possibility of propane or oil in that area. But, again, that wasn't part of the facts in this case. Thank you. May it please the Court, I'm Terry Wood and I represent Mr. Veers. If I could maybe respond to a couple of the questions that the Court directed to Mr. Friedman regarding whether the Court is required to accept the district court's determination that Agent Landers was credible in his opinion that he could smell the odor of marijuana. We did argue in our opening brief on page 54 through, I think, 58 or 60, that the Court clearly erred in relying on making that determination, and that was based on the fact that Agent Landers had withheld this material information about the informant, withheld the fact that the conversation where there was marijuana grow discussed occurred two years prior to the time that he began investigating, the fact that Agent Landers failed to provide the Court with information that it needed to determine his ability to reliably smell and some other reasons that are set forth there. Does that make it into a deliberate or reckless misrepresentation? Make the agents claim that he smelled the marijuana? Yes. Your Honor, I believe that Judge Hogan found, in that respect, that the defense evidence established that there was a good likelihood that he made a false positive. In other words, that he honestly believed he smelled the marijuana, but he didn't. He honestly believed that he smelled the marijuana. That was the finding that the district court made. Yes. If that is true, then it's not a deliberate or reckless misrepresentation, is it? And isn't that what is required? That's true, Your Honor, but I believe that there are two fundamental issues here. One was a Franks hearing that challenged the veracity of Mr. Landers on a number of issues. The other issue, though, was, regardless of how the Court ruled on the Franks claims, whether the warrant itself still provided probable cause for the search. And we've argued, at least Mr. Veers has argued fairly extensively, that the warrant did not provide probable cause for the search because the opinion regarding the power consumption being enough to support a high grow was simply conclusory and not supported by any factual basis in the four corners of the affidavit. That the opinion regarding the detection of marijuana odor was likely was also conclusory and not supported by any factual basis that a magistrate could determine that that opinion was reliable. And so, basically, without the opinion of the power consumption, without the opinion of the detection of the marijuana odor, then the warrant fails to state probable cause, regardless of whether Mr. Landers made recklessly false statements. Let me just ask one more time. What would make the agent qualified to detect the odor of marijuana in a case such as this? Your Honor, the district court would certainly have to make that finding based on facts presented in the affidavit. I believe, based on the evidence from Dr. Woodford, that it was humanly impossible to accurately detect the odor of marijuana under the circumstances of this case. And nothing would have made Agent Landers qualified because it would be based on how humans detect odors. So what are you asking us to hold? Your Honor, we are asking the court to hold, of course, to reverse the district court, but to do so on the basis of the need for there to be a factual basis in the affidavit to support the reliability of an officer's opinion that he detects an odor of marijuana. You've already told us that that's impossible. No, I said it's impossible under the circumstances of this case, the facts of this case, that from that distance and with there being no apparent venting of the odor inside the residence to get outside the residence, based on what the officer tells us, that it's the opinion of Dr. Woodford that it would be humanly impossible to detect the odor, to accurately detect it. Not to think you smelled it, but to accurately smell it. I'm having trouble reading the judge's order. I can't figure out exactly what it is that you would have us hold. Are we supposed to hold that the judge made findings of fact that are clearly erroneous or did not make findings of fact? Your Honor, other than disputing, saying that the court's finding that Agent Landers was credible in his belief that he smelled marijuana, we've argued that's clearly erroneous. The other issues that we've argued for lack of probable cause are all questions of law. Does the affidavit within the four corners contain a factual basis for the magistrate to determine? If it's questions of law, that means it really doesn't matter what the district judge said in the order. Correct. It's de novo review by this court on the court. I guess I'm still confused as to what it is that you want us to hold as a matter of law and what you're asking us to say is clearly erroneous. Your Honor, I believe that it's already clear from the Ninth Circuit precedent as a matter of law that the affidavit has to state the factual basis for the magistrate to be able to determine whether an opinion or conclusion is. That's too general for me. Maybe my colleagues understand it, but I don't in the context of this case. It looks to me as though the problem with the affidavit is that the policeman It looks very much as though the policeman was intentionally deceptive, covering up the indictments of his confidential source, the motivation of his confidential source, the staleness of the information from the confidential source, and the affidavit is dodgy about the electric usage. It says it's high without saying how high. Gee, mine is 1,600, 1,700 kilowatt hours per month, and I don't have electric keyed. I don't know if it's that high. It looks as though the policeman was deceptive, but I don't have a finding one way or the other that I can really fasten on to. That's correct. Judge Hogan didn't find deception other than the material omission facts. He didn't find non-deception. Your Honor, he said, and just about the odor. I know he said, well, it really didn't matter about the informant because she just triggered the investigation. But I can't tell whether he says the policeman was trying to fool the magistrate. Your Honor, he doesn't. He says that the officer made a material omission of fact regarding the confidential informant. Which lines are you looking at? I see where he says defendants argue it. I can't tell where he found one way or the other, that the policeman was honest or not. He only made a finding regarding there being a Franks violation as to the material information regarding the confidential informant being omitted, Your Honor. Could you tell me the page and line you want me to underline? I am looking for that, Your Honor. It's on page 7 of the order, which would be on page 172 of Mr. Veer's excerpt of record, where the court says that information was omitted. What line? It would be the second to the last line, Your Honor, third, second, and last line of that page. He doesn't say whether it's intentional or not. Your Honor, he doesn't. There would seem, though, since he made a finding that they knew this information and it wasn't put in the affidavit, that one would presume it was at least a knowing omission from there. Your Honor, what he does find regarding Mr. Lander's sense of smell, that finding is on page 175 of the excerpt of record, and he says he doesn't make a finding regarding the reliability. What he makes a finding is that he found Agent Landers to be credible with respect to his representations regarding the detection of marijuana. So he found him to be credible, and that is a distinct concept from whether the person is reliable. You could be the most credible, believable person in the world and yet provide untrustworthy information because the information is not reliable. You didn't accurately perceive something. You might say, I smelled marijuana. If you tell him the truth as he sees it, but he doesn't really know the smell of marijuana from the smell of horse manure or hay. I don't know what that smells like. I think selective perception is probably the more likely explanation. We all know that smells can trigger memories. Well, selective perception basically says memories or your mind can trigger the honest belief that you're smelling something that you're not. Counsel, your argument that where the court finds Landers credible there on page 10 goes to the question of Franks but does not go to the question of the legal basis for issuing the warrant. Is that correct? Correct, Your Honor. It does not go to whether there is a basis for the magistrate to determine the reliability of that opinion that he smelled marijuana. So what we need is a statement in the affidavit. I've had training where they put marijuana in front of us. That would be one way, Your Honor. That's what it smells like, so I know what it smells like. We submit, Your Honor, he should tell the magistrate how far away he is when he smells marijuana, whether there are other structures and how close they are to the source that he claims marijuana. Are you saying that as a matter of law in the circuit that we need to, before somebody can say I smelled marijuana, that we are going to have to come in and tell you how far away I was standing? Your Honor, I'm saying that that would be one, that's a factual basis for somebody to evaluate it, and the court would find that that's just incredible. What if he'd said I smelled it from 300 feet away? I have no idea if it's incredible to smell it at 300 feet. I don't even know what it smells like. Did the affidavit say that the policeman knew what it smelled like? It did say that. It never said that he had reliably detected the odor of marijuana under similar conditions or in similar distances, and that would be something that someone could find? Yeah, although that's true. I mean, once you get down to those kinds of details, but the district judge does find that he's been on something like 35, that he's offered testimony on something like 35 other warrants, and always, you know, he's had 100 percent success rate on that. But, Your Honor, that's not within the four corners of the affidavit. So, again, that argument was going to what has to be in the affidavit for a magistrate to determine whether the opinion is reliable. Counsel, you've gone way over your time. I'm aware of that, Your Honor. I think your colleague saved a little bit. We'll hear from Appley. Appley. May it please the Court. Good afternoon. I'm Steve Gunnels. I am a special assistant United States attorney, and I represent the government in this case. I represented the government at the motion to suppress hearing in the district court as well. Counsel, let me tell you what bothers me. We don't confer in advance, so I have no idea what my colleague said. To me, it looks like a dishonest affidavit by the policeman. I just thought the wording was tricky to the point of obvious dishonesty. He says, in March 2004, we got an anonymous tip. It makes it sound like, and then he says that the informant hadn't seen the marijuana grow firsthand, but had overheard conversations. The grow had apparently been in operation for several years. I would understand that to mean that, unless somebody told me otherwise, that she heard these conversations recently. It turns out it was two, two and a half years ago. And then it goes on to say power usage has not dropped below 2,600 kilowatt hours per month. Well, I just happened to notice my last electric bill, and it was 1650, and I don't have electric heat. I have oil, hot water along the baseboards, so it didn't look that high. And he doesn't really say any comparison to show that it's high. And he doesn't say what electricity usually runs in that area or for those kind of trailers. And then he's talking about what the informant is like, and paragraph 37, he goes on about all these things about how wonderful she is, his or her own accord voluntarily, no compensation. Last line, the informant has a criminal history involving crimes of dishonesty. Well, okay, so what does that mean? She had a shoplifting 15, 20 years ago? I don't know. It turns out she's under indictment for a whole pile of real serious crimes of dishonesty. So I figure this policeman is deceptive. And then all I'm left with is that he says he smelled the marijuana, but he doesn't say how far he was away. Why by itself is that believable in light of the other evidence of dishonesty? Your Honor, I'd like to deal with those things one at a time. Well, I told you frankly what's on my mind. Go ahead and help me. I appreciate that. I appreciate that, Your Honor. Your Honor, when the agent refers to the source, as became clear, let me first of all say that I think it's easy to confuse what's within the four corners with what came out at the Franks hearing. Agent Landers testified at length about his investigation and about his prior experience, and that is in the excerpt of record available to the Court. He is a very experienced agent. He has spent 20-some years as an agent investigating marijuana cases. He's also not the affiant. And that struck me as additional evidence of trickery, actually. If you tell me something not under oath that's false, and then I truthfully say in an affidavit what you told me, neither of us has committed perjury, but we fooled the Court. I understand that, Your Honor. I can tell you that the reason for the relaying of information from one agent to the other is that Agent Landers is an agent in Bend, Oregon. Agent Flannery is an agent in Eugene, Oregon. Eugene is where the magistrate court is, and so the information was conveyed to save a five-hour round trip. And that came out at the Franks hearing as well. And so that answers that question, although I understand that concern. The reason that I agreed to treat Agent Landers as the affiant in the Franks hearing was because I didn't want to encourage what the Court suggested would be the trickery of saying one agent telling another agent something untrue and then avoiding accountability for that information later on. Counsel, did either Flannery or Landers know that the confidential source was currently under indictment? Did they know that at the time that they sought the warrant? That is unclear, Your Honor, and the District Court found that it was unclear. Under indictment in the state system or the federal system? State system, Your Honor. In the order at page 7 of the order, the Court writes, It is unclear just how much Landers and Flannery knew of the information regarding the confidential source at the time the affidavit was prepared, but some investigation was conducted and material information bearing on the reliability of the confidential source was omitted from the affidavit. Nonetheless, the information from the CS is what started the investigation and does not provide the primary support for probable cause. The agent testified at the Franks hearing that he used that information from the source as what he referred to as a tipster. Just the information came in, he decided to use it in order to launch into this investigation where he was conducting surveillance, where he was attempting to smell the odor of marijuana, and so on. He further testified that he had conducted in excess of 100 marijuana grow investigations, in 35 of which he had smelled marijuana, and in those 35 he had applied for search warrants and obtained the search warrants and found a marijuana grow in all 35 of those cases. He testified that had he not smelled it. Was that in the four corners of the affidavit? It is not, Your Honor. So isn't what we're talking about now what's in the affidavit, not the testimony? Your Honor, at the district court end here I think we've kind of gone back and forth between those two things, but sticking with your question, what is within the four corners of the affidavit is that Agent Landers has extensive experience both domestically and internationally with marijuana growing investigations, is familiar with the odor of marijuana, and has conducted And that was true. And that was true. Right. And so then we go back to the Franks hearing. Sorry, go ahead. And that was true. And it is difficult in my mind to balance those two things, the four corners and then the Franks hearing. But that was true. It was testified to by Agent Landers. And the district court found Agent Landers' testimony more credible than the defense expert with regard to the smell and with regard to electrical power usage. Let me back up for just a minute to the informant. How could anyone possibly swear that a grow has been going on for a couple of years based on the evidence that somebody says she heard a conversation between two people about the grow two or two and a half years ago? Well, Your Honor, I don't believe that the agent swore that the grow had been going on for two years. I believe he swore that the information provided by the source was that the grow had apparently been in operation for several years. That's what I meant. You're right. I assume according to the source it had been going on for that long. How would she know if the last conversation she heard was two or two and a half years ago? That's the omitted fact. Well, whether it was known to the agent or not, I don't know. But when he omitted it, I don't know that it had any bearing on, at least in his mind, according to the court's finding. In his mind, he used her information as a tipster only and conducted this investigation subsequent to that. It was the investigation, what he learned from his own perception, that really forms the basis for the probable cause, and that's what the district court found. I interrupted you as you were about to go on to the electricity. With regard to electricity, Your Honor, the agent, I think there are two criticisms being made of the agent in his affidavit. One is that he's overstating things, and then I think there's another that he's understating, for example, criminal history or other things. Well, actually, the question that I raised was more about insinuating something without a basis. He says power usage has not dropped below 2,600 kilowatt-hours per month. The highest reading has been 4,300 kilowatt-hours in one month. But I don't see anything there. The insinuation is that's really a lot of electricity, but I don't see anything there that would justify drawing the inference that it's really a lot. Yes, Your Honor. In the next sentence of that affidavit, the agent essentially says it's relative. Maybe the previous customer used to go around turning lights off more assiduously. Maybe, but I don't think that this Court can require an affiant, a police officer, to conduct a – we talked earlier, this Court dealt earlier with spreadsheets. Well, I'd like to know significantly higher, negligibly higher? Relatively higher. I mean, I've currently switched to a lot of those fluorescent bulbs that you screw in instead of light bulbs, so it's marginally lower, but not significant. I don't know what higher or lower means without numbers. And I don't know why 2,600, why I should accept the insinuation that it's high. Is there more? Aren't you arguing, at least I thought you were in your briefs, that it's not any one thing? It's not just the power consumption, but it's also the detection of odor, which he found to be credible, and Weicker's criminal history involving marijuana operations. So I thought your argument was a totality of the circumstances with respect to the affidavit. Am I correct? Your Honor, you have correctly brought me back to my argument, and that is my argument, that under the totality of the circumstances presented in this affidavit, including the relatively higher power usage that the agent doesn't say is consistent with a marijuana grow or is indicative of a marijuana grow, but is high enough to support a sizable marijuana grow. In other words, this isn't a trailer that is cold and would wither these plants, but it's a trailer that is capable of containing a marijuana grow. And I think that's when you get into power usage records in investigating a marijuana grow case, you can oil the numbers any which way you want. No number tells you that there is a marijuana grow there or even is likely there. All you can determine is that this power usage is capable of producing marijuana in this size of an enclosure. And so that's what the agent did. He didn't overstate the evidence that he had gained. It's capable, is all he claimed in the affidavit. He points out that Ms. Weichert has a prior conviction for delivery and manufacture of marijuana within the past four years, that he has seen her time and time again come into the place, apparently trying to hide herself by pulling down the flap to the garage door as soon as she pulls into the garage. And he further says that when he approaches the house from the wooded area behind the house, he hears the sound of exhaust fans. In his training and experience, exhaust fans are consistent with marijuana grow operations, venting bad air or venting in good air to the marijuana. And most significantly, and I think the defense would agree that the most significant claim by the affiant is that he smelled, on two separate occasions, marijuana from a proximity and downwind. And he concluded, based on his training and experience, that the only source for that smell could have been that house, Ms. Weichert's house. The subject of the search warrant. And so based on all of that, based on the totality of those circumstances, he believed there was probable cause to search that house. I didn't understand something about the garage. When I pull into my garage, I always get out of the car and close the door right away  What's suspicious about the way she pulled her car in? Well, the way I read the affidavit, at least, it appears that every time she goes into this external garage, this isn't a heated garage, this is a portable setup garage, as soon as she enters the garage,  which, for a convicted marijuana grower, would be significant in the sense that she didn't want law enforcement to be aware of her connection to that house. It's her own private area, no reason to preserve heat because there isn't any heat. There's no heat coming from that building. It's one of those, as I picture it, it's one of those portable structures with plastic rods and a flap that goes up and down, at least. That's how I picture it in the affidavit, at least. And so we have these two separate issues. One is whether within the affidavit itself there's probable cause. Could a reasonable magistrate find that there's a fair probability that marijuana will be found inside this house? Is there something suspicious about the garage, the portable garage? Not the garage itself. I don't believe there's anything suspicious about the garage itself. There was no marijuana growing inside the garage. The marijuana was all growing inside this trailer near the garage. The suspicious thing or the fact that's mentioned in the affidavit is that as soon as Ms. Weichert gets out of her car, she pulls down the flap. And he sees that happening time and time again, which could have an innocent explanation or it could have a . . . The reason I asked you if there was something suspicious about the garage is I didn't see what was suspicious about pulling down the flap unless there's something suspicious about the garage. I think the gist of that entry into . . . And I think the danger is when we isolate one fact that's in an affidavit and say, well, that alone doesn't amount to probable cause, so let's exclude that. I'm willing to add them all up. When I add them all up, what I've got that looks honest is it's a woman who's a convicted drug felon and the policeman thinks he smells marijuana, though he doesn't say from where. But then I've got these other things that look like he's not . . . that he's being purposely evasive with the court about his informant, and it makes me worry.  There is, Your Honor. Ms. Weikert's criminal history is that she was disconvicted within the past few years of delivery or manufacture of marijuana relating to a marijuana grow at another trailer in Bend. That's what I meant about being part of the totality. What I feel compelled to say is that that's why I think this court should give such deference to the district court in its credibility findings because I was there. I was there at the motion hearing to see Agent Landers testify about his career, this case, what went into the affidavit. I would suggest that this court could not find that he was lying, that he was not credible. But that can only go to the Franks question. It can't go to the sufficiency of the warrant, which seems to me to be the easier road for the appellants to succeed here. I think they have a very, very tough road here under the Franks standard. But the sufficiency of the warrant seems like a little easier road for them to tread. But the question of his credibility doesn't help. It only helps you on Franks. It doesn't help you on the Four Corners, does it? That's true, Your Honor. However, we tend to conflate those two things when we argue this case, both in district court and here, I think. And so I appreciate you bringing me back to that. When the only time that the issue could arise, whether the agent intentionally or recklessly omitted material information from the affidavit in order to deceive the magistrate, was through the Franks hearing. And so without the Franks hearing and the agent testifying and being found to be credible and, frankly, testified uprightly and took responsibility for every error that he made or was suggested to have made in preparing the affidavit. I think that we can't, this Court should not, require agents, police officers, to draft affidavits the way a lawyer, viewing it in 20-20 hindsight with the ability to conduct a full defense investigation, would draft an affidavit. There was no finding by the district court, again, that Agent Landers intentionally or even recklessly omitted material information. The Court said it's not clear when the agent came to be in possession of that information. And when he made credibility findings, the district court judge consistently found that Agent Landers was credible, in fact more credible than the defense expert with regard to smell and with regard to power usage information. And so I would urge this Court to, on the Franks issue, to defer to the district court on those credibility findings and with regard to the four corners of this affidavit to give great deference to the magistrate's decision to grant this warrant. Thank you. Thank you, counsel. Thank you, Your Honors. I want to direct the Court's attention to the transcript. On page 74 of the transcript, line 17, with regard to the knowledge of the officer, with regard to the informant's criminal history, he did, in fact, know that at the time and testified that he had determined not at the time of the original tip but long before he ever sought the affidavit that he was aware of her pending criminal issues. And then on the next page, on page 75 of the transcript, and again this would be at line 22 going to the following page. That was on 74. Now we're at 75? Yes. Yes, and then the next page, 75, with regard to what he can infer with regard to power use. If he was asked specifically, do you know from your training experience how much electrical power would be used to support a 300-plant growth? His answer, that would be impossible for me to say. Too much is variable in the individual grower. I've seen anywhere from four marijuana plants under a thousand halide light up to probably in excess of 80, maybe even 100 marijuana plants, depending on the size and how they grow. So no, I can't relate power usage to size directly. Again, Your Honors, we would submit that within the four corners of the affidavit, it is, it does appear that the officer wasn't completely forthcoming with regard, with the court. And all we're doing, Your Honors, is asking the court to consider this case, these circumstances, for these appellants. And we would submit that the affidavit does not support the search warrant. With regard, perhaps to ---- I can't remember exactly what we're supposed to do. As I remember under Franks, what we're supposed, what the district court is supposed to do is if there's evidence of actual dishonesty, hold the hearing. The judge did that.  And then at the hearing, but before holding the hearing, the judge says, would there be enough even without that, even without the dishonest material to support a warrant? Or does he do that after the hearing? I can't remember exactly right now. I think he makes a determination as to whether a hearing should be granted based upon the affidavits that are submitted in support of the request for the Franks hearing. In this case, the judge did grant the Franks hearing. What we, what I think the problem is facing this court is that the opinion of the judge is lacking in a number of respects with regard to the very questions that you're asking. The court essentially avoided the question as to whether or not the officer was being completely forthcoming. I mean, ultimately, obviously, the judge's decision ---- Let me focus you on what's on my mind. Sure. If all we had was what's left, which is the woman in the trailer is a convicted dope dealer and the policeman smelled marijuana, to me that would be enough for probable cause. But if part of the totality of circumstances is not only that she's a convicted dope dealer and the policeman smells marijuana, but also that the policeman who says that he smelled marijuana has tried to deceive the court with some deliberate and highly material omissions, then I wonder if I'm supposed to apply totality of circumstances differently. I don't know exactly what law to apply. I think what the court has to conclude is that if it suspects that the officer was being dishonest, that you've got to disregard his other ---- whatever other information that he provided. I mean ---- What if the district judge holds a hearing, as he did, and says, I think the officer was being honest about smelling marijuana? Again, we would suggest that the court has to consider that that was a conclusory opinion, that it was shaded by the perception that the officer had. There was an expectation here that he was going to smell marijuana. Let me ask ---- Do you have a case for me? Unfortunately, that's why we're here, I think. I don't think there are other cases. I know these are very particular rides. The only cases that we have, Your Honor, is with regard to dogs. And in the instance where we're dealing with dogs, the dogs have been tested. There is an objective standard. Here we have a subjective determination. And I guess what we're suggesting is that where we have this kind of subjective standard, then you have to ---- in terms of the totality, you have to look at everything else that the officer has provided to determine whether or not to believe him. And based upon the scientific evidence that did come out of the Frank's hearing, we would suggest that he should be disbelieved. Thank you, counsel. United States v. Beers and Eaker is submitted. And we're recessed for the day.
judges: Dw Nelson, Kleinfeld, Bybee